Ray H. Graves and Pauline Graves v. Commissioner.
Graves v. Commissioner
Docket Nos. 15028, 18292, 38145.
United States Tax Court
T.C. Memo 1959-24; 1959 Tax Ct. Memo LEXIS 226; 18 T.C.M. (CCH) 113; T.C.M. (RIA) 59024; February 10, 1959
Richard G. Worden, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in these consolidated cases in income tax of petitioners and additions to tax under section 293(b) of the Internal Revenue Code of 1939 for the years 1940 to 1945, inclusive, in the following amounts: Additions to Tax
Year
Deficiency
under Sec. 293(b)
1940
$ 518.18
$ 259.09
1941
2,489.29
1,244.64
1942
12,335.67
6,167.83
1943
4,838.84
2,419.42
1944
23,770.74
11,885.37
1945
8,558.64
4,279.32
*227 Petitioners did not appear for trial and respondent's motion for judgment in the amount of the deficiencies in tax as set forth above for the years 1943 and 1944 was granted. The questions remaining as to the other years involved are whether respondent was justified in reconstructing petitioners' business receipts by use of the "bank deposits" and expenditures method, and whether the business receipts and business income were properly reconstructed. There is also the question present in all of the years involved, as to whether petitioners are liable for the addition to tax provided by section 293(b) of the Internal Revenue Code of 1939, and the question of the statute of limitations with respect to the years 1940, 1941, 1942 and 1945. Findings of Fact Petitioners are husband and wife and during the taxable years involved they operated a chain of drugstores located in four or five cities in Kansas. They lived in McPherson, Kansas, and they filed their joint income tax returns for all of the years involved with the then collector of internal revenue at Wichita, Kansas. Petitioners maintained records, purportedly covering the operation of their drug business for each of the *228 taxable years, in columnar journals commonly known as "Greenwood Books." A separate book was kept for each store for each year. The books provided space for detailed recordation of receipts and disbursements. These books, together with canceled checks on all bank accounts, were made available to respondent's agents. Entries in the books were made by Pauline for the most part but some entries were made by Ray. Disbursements were recorded in these books in detail; but receipts were entered as one monthly, and in some cases one annual, figure. Petitioners told respondent's agents that in each store they maintained a daybook in which they recorded daily receipts and daily cash paid-outs. When requested to produce the daybooks, they stated that they had been destroyed. Subsequently, one of the daybooks for the Junction City store, covering the period March 8, 1944 to February 9, 1945, was made available to respondent's agents by the manager of that store. The book for the Great Bend store was made available by petitioners to their accountants for use in preparation of the 1945 return. Except for one of the four stores operated in that year, the accountants were not furnished records of *229 business receipts which they considered sufficient for preparation of petitioners' 1945 tax return. For three stores they used a combination of adjusted bank deposits and sales tax returns to reconstruct business receipts. No deposits to other than store checking accounts were used. During the years involved petitioners maintained 13 different bank accounts in the banks located in four cities in Kansas. Some of these accounts were store accounts and some were in the names of one or the other of the petitioners and some were named "special" or "personal" and one was called "Ray Graves, Cattle Acct." There was another bank account, opened in 1945, shortly after the agents started investigating petitioners' income tax affairs, in the bank at Vinita, Oklahoma. The signature card on this account was signed "Myrtle G. Graves" by Pauline and the address given was her mother's address in Vinita. Respondent's agents considered petitioners' books and records respecting business receipts inadequate and incomplete and proceeded to reconstruct the gross receipts from operation of the drugstores by the commonly called "bank deposits" method. In reconstructing petitioners' gross receipts from *230 the drugstore operation, respondent determined total deposits to all of petitioners' bank accounts from the records of the respective banks. Transfers between accounts and deposits of nonbusiness receipts were obtained from examination of deposit slips and eliminated, and currency expenditures and accumulations added, to arrive at corrected gross receipts. Respondent computed the total sales, beginning and ending inventories, merchandise purchases, total operating expenses and gross and net profit from petitioners' business operations for the years 1940-1945, on their returns for those years, in corrected amounts. Respondent also considered petitioners' purchase of United States Savings Bonds, currency deposits to personal checking accounts and Postal Savings accounts, currency loans, unreported receipts from sales of drugstore equipment, deposits of proceeds of sales of drugstore merchandise in petitioners' personal bank accounts, check transfers from a store manager's account that contained business receipts, to Ray, and check transfers by petitioners from business accounts to personal accounts. Respondent's computation also reflected unreported receipts from cattle sales and from *231 a store sale transaction. The particulars and amounts of items contained in respondent's computation, based on the foregoing considerations and determinations, are all set forth in particular detail in the notices of deficiencies in these consolidated cases. They show respondent's determination that petitioners understated their income in each of the years involved as follows: Under-
Year
Per Return
Correct
statement
1940
$ 5,372.24
$10,716.20
$ 5,343.96
1941
5,917.51
15,668.94
9,751.43
1942
4,214.84
31,087.01
26,872.17
1943 *
6,548.84
18,788.59
12,239.75
1944
14,228.83
50,700.79
36,471.96
1945
20,875.41
33,954.21
13,078.80
In 1950 Ray was indicted on counts for wilfully and knowingly attempting to defeat and evade income tax by filing a false and fraudulent income tax return in violation of section 145(b) [1] for each of the years 1943, 1944 and 1945. After trial by jury he was convicted on the count covering the year 1944 and acquitted on the remaining two counts. He was sentenced to serve nine months in prison and fined $5,000. His conviction was affirmed by the Court of Appeals for the Tenth Circuit, Graves v. United States, 191 Fed. (2d) 579. *232 Petitioners' books and records were incomplete, incorrect, and inadequate for each of the taxable years 1940-1945, inclusive. Respondent properly reconstructed petitioners' business receipts and income by use of the "bank deposits" method for each of the taxable years. A part of the deficiency in income tax is due to fraud with intent to evade tax in each of the taxable years. The returns for each of the years here involved were fraudulent with intent to evade tax. Opinion The facts establish the inadequacy of petitioners' books and records, particularly with respect to receipts from the operation of the drugstore chain. Respondent was justified in resorting to the bank deposit method to reconstruct and determine income. We have found that respondent properly reconstructed petitioners' business receipts and business income in each of the taxable years. Respondent based his determinations of deficiencies on this reconstruction. Not only are such determinations prima facie correct but here petitioners did not see fit to assail them by evidence or argument. Respondent's *233 evidence clearly shows that petitioners filed false and fraudulent returns for each of the years with intent to evade tax. The evidence shows substantial and consistent understatement of income; the use of an employee's personal bank account for the diversion of business receipts in each of the years involved; a consistent use of large sums of currency, undisclosed on the books, for loans, bond purchases and personal bank and Postal Savings account deposits; entry of fictitious merchandise purchases on the books and the deposit of checks purportedly in payment therefor to personal checking accounts; the deposit of checks in payment for merchandise, directly to personal bank accounts; and failure to report proceeds from cattle sales. There was also the opening of the bank account in Vinita, Oklahoma, by Pauline, in a name and address she did not customarily use. This account was opened during the investigation and large amounts of currency were deposited in this account. At the start of the investigation Ray was asked to name all of their bank accounts maintained during the years in question. He told of the existence of five. The agents found three others and when confronted with their *234 discovery, Ray then admitted the remainder of the bank accounts. There is also Ray's conviction for criminal fraud with respect to 1944. Upon the whole record we hold respondent discharged his burden of showing a part of the deficiencies for each of the years involved was due to fraud with intent to evade tax, which means respondent was correct in making the additions to tax under section 293(b) and also the returns for these years were fraudulent with intent to evade tax, and, therefore, not barred by the statute of limitations. Section 276(a). Decisions will be entered for the respondent. Footnotes
*. Victory tax net income.↩
1. All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.↩